**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
Southern Division

| | | |
|---|---|---|
| COURTNEY JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-17-2775 |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

Courtney Jackson ("Plaintiff") brought this action under 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"). The Commissioner denied Plaintiff's claim for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and for Supplemental Security Income Benefits ("SSI") under Title XVI of the Social Security Act. Before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 12) and Commissioner's Motion for Summary Judgment ("Commissioner's Motion") (ECF No. 13). The Court has reviewed the motions, related memoranda, and the applicable law. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md.). For the reasons presented below, the Court hereby **DENIES** Plaintiff's Motion and **DENIES** Commissioner's Motion, and **REMANDS** the Administrative Law Judge's decision pursuant to 42 U.S.C. § 405(g) for further clarification.

1

## I. Procedural Background

On August 6, 2013, Plaintiff filed for DIB under Title II and SSI under Title XVI, alleging disability beginning November 1, 2009, which was later amended to January 8, 2013. R. 41, 59. Plaintiff alleged disability due to joint dysfunction of the knees, obesity, degenerative disc disease, bipolar disorder, past substance abuse, right testicular pain, hypertension and seasonal allergies. R. 43-44. Plaintiff's claims were initially denied on September 13, 2013 and upon reconsideration on April 10, 2014. R. 41. An administrative hearing was held on July 28, 2016, R. 56-72, and on August 16, 2016, the claim was denied. R. 38. Plaintiff sought review by the Appeals Council, which concluded on July 25, 2017, that there was no basis for granting the Request for Review. R. 1.

## II. Standard of Review

On appeal, the Court has the power to affirm, modify, or reverse the decision of the administrative law judge ("ALJ") "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2015). The Court must affirm the ALJ's decision if it is supported by substantial evidence and the ALJ applied the correct law. *Id.* ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); *see also Russell v. Comm'r of Soc. Sec.*, 440 F. App'x 163, 164 (4th Cir. 2011) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)). "In other words, if the ALJ has done his or her job correctly and supported the decision reached with substantial evidence, this Court cannot overturn the decision, even if it would have reached a contrary result on the same evidence." *Schoofield v. Barnhart*, 220 F. Supp. 2d 512, 515 (D. Md. 2002). Substantial evidence is "more than a mere scintilla." *Russell*, 440 F. App'x at 164. "It means such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Id*. (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (internal quotation marks omitted) ("It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence.").

The Court does not review the evidence presented below *de novo*, nor does the Court "determine the weight of the evidence" or "substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." *Hays*, 907 F.2d at 1456 (citations omitted); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) ("[T]he language of § 205(g) precludes a *de novo* judicial proceeding and requires that the court uphold the Secretary's decision even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). The ALJ, not the Court, has the responsibility to make findings of fact and resolve evidentiary conflicts. *Hays*, 907 F.2d, at 1456 (citations omitted). If the ALJ's factual finding, however, "was reached by means of an improper standard or misapplication of the law," then that finding is not binding on the Court. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citations omitted).

The Commissioner shall find a person legally disabled under Title II and Title XVI if she is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012). The Code of Federal Regulations outlines a five-step process that the Commissioner must follow to determine if a claimant meets this definition:

1) Determine whether the plaintiff is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i) (2012). If she is doing such activity, she is not disabled. If she is not doing such activity, proceed to step two.

2) Determine whether the plaintiff has a "severe medically determinable physical or mental impairment that meets the duration requirement in § [404.1509/416.909], or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2012). If she does not have such impairment or combination of impairments, she is not disabled. If she does meet these requirements, proceed to step three.

3) Determine whether the plaintiff has an impairment that "meets or equals one of [the C.F.R.'s] listings in appendix 1 of this subpart and meets the duration requirement." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) (2012). If she does have such impairment, she is disabled. If she does not, proceed to step four.

4) Determine whether the plaintiff retains the "residual functional capacity" ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (2012). If she can perform such work, she is not disabled. If she cannot, proceed to step five.

5) Determine whether the plaintiff can perform other work, considering her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v) (2012). If she can perform other work, she is not disabled. If she cannot, she is disabled.

Plaintiff has the burden to prove that she is disabled at steps one through four, and Commissioner has the burden to prove that Plaintiff is not disabled at step five. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).

The RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a "regular and continuing basis." 20 C.F.R. §§ 404.1545(b)-(c), 416.945(b)-(c). In making this assessment, the ALJ must consider all relevant evidence of the claimant's impairments and any related symptoms. *See* 20 C.F.R. §§ 404.1545 (a), 416.945 (a). The ALJ must present a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)," and must then "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996

4

WL 374184 at *7 (S.S.A.). "Ultimately, it is the duty of the [ALJ] reviewing the case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts of evidence." *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)).

### III. Analysis

The ALJ evaluated Plaintiff's claim using the five-step sequential evaluation process. R. 43-50. At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since January 8, 2013. R. 43. At step two, under 20 C.F.R. §§ 404.1520(c) and 416.920(c), the ALJ determined that Plaintiff has the following severe impairments: joint dysfunction of the knees, obesity, degenerative disc disease, and bipolar disorder. R. 43. The ALJ stated that these impairments were "'severe'" as they "have more than a minimal effect on the claimant's ability to function." *Id.*[1] In step three, the ALJ determined that Plaintiff does not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926. R. 44. At step four, the ALJ determined that Plaintiff has the RFC to:

> [P]erform light work as defined in 20 C.F.R. §§404.1567(b) and 416.967(b) except he can occasionally climb ramps/stairs but never climb ropes, ladders, or scaffolds, he can occasionally stoop, kneel, crouch, crawl, and balance, he is limited to simple routine tasks that does not entail more than occasional changes in a work setting, and he is limited to jobs that do not require more than occasional contact with supervisors, co-workers, and the public.

R. 45-46. At step five, the ALJ determined that Plaintiff is unable to perform his past relevant work as "a building maintenance repair [sic]." R. 49. This conclusion was based upon the testimony of the vocational expert ("VE") who stated that Plaintiff's past relevant work was

---

[1] The ALJ also noted that Plaintiff has "a history of substance abuse, right testicular pain…hypertension that improved with medication, and seasonal allergies," but that these impairments' were "not severe" as they had not "resulted in any continuous vocationally relevant limitations." R. 44.

5

classified as medium exertion. *Id.* Based upon the VE's testimony, the ALJ found that Plaintiff could perform jobs that existed in significant number in the national economy and therefore Plaintiff was not disabled. R. 49, 68-72.

On appeal, Plaintiff argues that the Court should enter judgment as a matter of law in her favor, or in the alternative, remand this matter to the Social Security Administration for a new administrative hearing, alleging that: 1) the ALJ failed to properly consider a medical opinion in evidence resulting in prejudice to Plaintiff; 2) the ALJ failed to account for Plaintiff's limitations of concentration, persistence and pace in his RFC assessment; and, 3) the delay in proceedings resulted in prejudice to Plaintiff. Pl.'s Mot. 7-12. For the reasons set forth below, the Court hereby **DENIES** Plaintiff's Motion and **DENIES** Commissioner's Motion, and **REMANDS** the matter for further clarification.

### A. *The ALJ failed to provide sufficient details in his assessment of Dr. Valarao's medical report preventing meaningful judicial review.*

Plaintiff alleges that the ALJ failed to consider a medical opinion concerning Plaintiff's functional capacity that was in a report authored by the Agency's consultative examiner, Dr. Perfecto Valarao. Pl.'s Mot. 7. Plaintiff argues that the section of the report entitled "functional status" was in fact Dr. Valarao's medical opinion concerning Plaintiff's functional capacity. *Id.* Plaintiff argues that the ALJ "must, at a minimum, explain the significance of Dr. Valarao's functional status because it contradicts the agency finding that [Plaintiff] can do light work." *Id.* Commissioner counters that the ALJ's decision was supported by substantial evidence. Comm'r's Mot. 5-6. Commissioner argues that the section in Dr. Valarao's report entitled "functional status" was "self-reported" information by Plaintiff and not Dr. Valarao's opinion, therefore the ALJ had no duty to discuss it. Comm'r's Mot. 8 (quoting the ALJ's decision).

An ALJ is not required to consider all evidence presented when making a determination on a claimant's disability application, only relevant evidence. 20 C.F.R. § 404.1545(a)(1). When the evidence includes opinions by medical and psychological professionals, an ALJ is required to evaluate them and—unless he gives controlling weight to a treating source—indicate the weight he accorded them. 20 C.F.R. § 404.1527(b); SSR 96-6P ("Administrative law judges and the Appeals Council are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions."); *see also Johnson v. Colvin*, No. MGL-KFM-14-2026, 2015 WL 5813317, at *6 (D.S.C. Sept. 30, 2015) ("The regulations require that all medical opinions in a case be considered . . . and, unless a treating source's opinion is given controlling weight, weighed . . . .") (listing criteria enumerated in 20 C.F.R. § 404.1527[c][1-5]). The Court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

Here, the ALJ considered the report by Dr. Valarao to be relevant to his inquiry into Plaintiff's disability status. In his decision, the ALJ stated:

> Dr. Perfecto Valarao described the claimant's self-reported limitations, and indicated that he probably had mental and musculoskeletal conditions, but did not offer an opinion with regard to his functional capacity. (Exhibit 8F). Dr. Valarao's report was used to support that he has a medically determinable musculoskeletal impairment related to his knees.

R. 48. The Court finds it likely that Dr. Valarao did not present a medical opinion concerning Plaintiff's functional status.[2] However, the ALJ's narrative is woefully lacking in explanation and details that would allow the Court to make such a determination without engaging in

---

[2] The section entitled "Functional Status" appears to be part of Plaintiff's self-reported limitations given its location in Dr. Valarao's report below the section entitled "Clinical History". R. 524-28. This assumption is further supported by the stark contrast between the details contained in the Functional Status section and those under the "Impressions" section, which the Court assumes are Dr. Valarao's findings. *Id.*

7

impermissible weighing of evidence. Without additional information, the Court cannot evaluate whether the ALJ fulfilled his duty to consider the medical evidence before him, weigh any opinion therein, and resolve any inconsistencies between the observations of Dr. Valarao and the ultimate RFC assessment. Based on the foregoing, the Court remands this case to the ALJ for further clarification.

### B. *The ALJ provided sufficient reasons for the weight accorded to a non-acceptable medical source's opinion.*

Plaintiff argues that he was prejudiced by the ALJ's failure to properly consider Dr. Valarao's opinion as it would have provided support for the opinion of treating Nurse Practitioner Elizabeth Zurek and ultimately the decision that Plaintiff is disabled. Pl. Mot. 9. "[A]n ALJ must accord controlling weight to a treating physician's medical opinion regarding a claimant's ability to work, if that opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence' in the record." *Sharp v. Colvin*, 660 F. App'x 251, 256 (4th Cir. 2016) (citing 20 C.F.R. § 404.1527[c][2]). However, an ALJ is not bound by these findings. *Id.* When reviewing a medical opinion before him, an ALJ can assign a lesser degree of weight but must provide an explanation for this decision and support it with evidence in the record. *See id.* at 257 (finding the ALJ's reasoning that "the claimant's reported limitations were not supported by [the physician's] office notes" was a sufficient explanation for the weight assigned). While nurse practitioners are not considered an "acceptable medical source," their opinions are "relevant in determining the severity of an impairment and its impact on an individual's ability to function" and may be assessed under the same factors as are used to evaluate the opinions of medical sources. *Rawls v. Comm'r, Soc. Sec.*, No. JFM-15-1609, 2016 WL 3087450, at *2 (D. Md. June 2, 2016) (citing SSR 06-3P).

8

Here, even setting aside the fact that the Functional Status section of Dr. Valarao's report is not a medical opinion, the ALJ provided a reason for according minimal weight to Ms. Zurek's opinion. Specifically, the ALJ's noted Ms. Zurek's opinion concerning Plaintiff's functional capacity was "inconsistent with her own treatment records that were devoid of references to the need for a cane, her own generally normal objective findings on examinations, including sensation, range of treatment and response to medicine, and the conservative nature of his treatment and response to medications." R. 48 (citations omitted). The ALJ further supported this reason by citing to medical records kept by Ms. Zurek, a review of which reveals notations of "normal" gait and station and "improved" knee pain only after a week of treatment by medicine. R. 571-72, 577-78. It is not the purview of the Court to reweigh the evidence before the ALJ; where the record "contains substantial evidence supporting the ALJ's conclusion" the Court defers to the ALJ's determination. *Sharp*, 660 F. App'x at 257. Therefore as the ALJ's determination of minimal weight to Ms. Zurek's opinion was supported by sufficient evidence in the record, Plaintiff was not prejudiced by the ALJ's refusal to consider Dr. Valarao's report as it relates to Ms. Zurek's opinion.

### C. The RFC Assessment

Plaintiff alleges that the hypothetical question the ALJ posed to the VE did not address Plaintiff's "moderate impairment" in concentration, persistence and pace as determined by the ALJ. Pl. Mot. 10. Plaintiff asserts that a limitation of "occasional changes in a routine work setting" does not adequately address a moderate impairment. *Id.* As the hypothetical posed to the VE in this case mirrors the language of the ALJ's RFC assessment, the inquiry turns to the RFC assessment itself to determine whether it adequately accounts for Plaintiff's limitations in concentration, persistence and pace. *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) (noting

9

that where a hypothetical matches an ALJ's RFC finding, it is "incomplete only if the ALJ fail[s] to account for a relevant factor when determining [the plaintiff's] residual functional capacity").

          i.    The ALJ failed to make any finding as to Plaintiff's limitations for concentration, persistence and pace.

As a threshold matter, the Court notes that the ALJ failed to make *any* finding of his own concerning the degree of limitation Plaintiff may have in concentration, persistence and pace. At step three of the evaluation, the ALJ considers a claimant's impairments as they compare to listings in 20 C.F.R. Part 404, Subpt. P, App. 1 § 12.00. If there is no corresponding impairment therein, the ALJ considers the functional limitations enumerated under Paragraph B, one of which is concentration, persistence or pace. *Id.*

> The ALJ employs the "special technique" to rate a claimant's degree of limitation in each area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." The ALJ uses a five-point scale to rate a claimant's degree of limitation in the first three areas: none, mild, moderate, marked, or extreme. In order to satisfy paragraph B, a claimant must exhibit either "marked" limitations in two of the first three areas, or "marked" limitation in one of the first three areas with repeated episodes of decompensation.

*Brocato v. Comm'r, Soc. Sec. Admin.*, No. CV SAG-16-2540, 2017 WL 3084382, at *2 (D. Md. July 19, 2017) (internal citations omitted) (quoting 20 C.F.R. § 404.1620a(c)(2)–(4). Ultimately, the ALJ's "decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section." 20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ noted in step three of his analysis that, "[w]ith regard to concentration, persistence or pace, [Plaintiff had] moderate difficulties by self report" but proceeded to list what appear to be qualifiers for why the ALJ did not accept this assessment. R. 45. However, at no point in his decision did the ALJ make clear what degree of limitation he found for Plaintiff's concentration, persistence and pace. While the ALJ did detail evidence that he used to support

his RFC finding, R. 47, this information is meaningless without a clear understanding of what degree of limitation Plaintiff had. The Court is therefore unable to review whether the ALJ's RFC assessment includes an appropriate limitation for Plaintiff's level of difficulty with concentration, persistence and pace. Accordingly, this matter is remanded with specific instructions to the ALJ to clarify Plaintiff's specific degree of limitation for concentration, persistence and pace, if any.

      ii.    The ALJ failed to consider the holding of *Mascio* in the RFC determination.

Assuming *arguendo* that the ALJ intended to make a finding of a moderate limitation in concentration, persistence and pace, and that he provided sufficient evidence to support this finding, the ALJ's RFC assessment as currently articulated does not account for these limitations nor was any explanation given for why these limitations were not included.

Under *Mascio*, the Fourth Circuit held that an RFC assessment must connect back to the step three finding of moderate limitations in concentration, persistence, and pace beyond just limiting the assessment to "simple, routine tasks." *Mascio,* 780 F.3d at 638 ("[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace."). This Court further clarified that holding, stating that "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary." *Talmo v. Comm'r, of Soc. Sec.,* No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015). Subsequent cases before this Court have expounded upon what kinds of proposed limitations do not meet the requirements of *Mascio*. *See, e.g.*, *Wilson v. Comm'r, Soc. Sec. Admin.*, No. ADC-17-2666, 2018 WL 3941946, at *5 (D. Md. Aug.

16, 2018) (determining that an RFC limiting the plaintiff to "simple, routine tasks and occasional contact with supervisors and coworkers, but cannot have any contact with the public" and to "low stress work, defined as occasional decisionmaking and occasional changes in work setting" was insufficient to meet the requirements of *Mascio* as it was a limitation on social function not concentration, persistence and pace) (listing cases).

The ALJ here found that Plaintiff could perform light work, but was "limited to simple routine tasks that does [sic] not entail more than occasional changes in a work setting, and he is limited to jobs that do not require more than occasional contact with supervisors, coworkers, and the public." R. 45-46. As noted above, the Court has previously found that such language in an RFC assessment fails to account for moderate limitations in concentration, persistence and pace. "The functional area of 'concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings.'" *Brocato*, 2017 WL 3084382, at *2 (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C)(3)). An RFC containing only a limitation to simple tasks does not address an individual's ability to stay on task. *See Mascio*, 780 F.3d at 638 (stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace"). Therefore, upon remand and reconsideration of his step three analysis, the Court directs the ALJ to include limitations in the RFC accounting for Plaintiff's difficulty with concentration, persistence and pace, or explain why this limitation was not included.

### D. *The delay in determining the case did not prejudice Plaintiff.*

Plaintiff alleges that the delay between his request for a hearing and the date the hearing actually took place prejudiced him. Pl. Mot. 11. As proof, Plaintiff points to: (1) the fact that the

hearing began after his date of last insured ("DLI") had already expired; and, (2) the fact that by the time the hearing took place medical evidence available to the ALJ was outdated and failed to reflect Plaintiff's recent weight gain. *Id.* at 11-12. These arguments are unpersuasive.

First, a claimant's DLI is only significant if he is applying for benefits after DLI has passed as the burden is upon the claimant to establish he was disabled prior to that date. *Baqir v. Astrue*, No. PWG-09-1245, 2011 WL 2669303, at *1 (D. Md. July 6, 2011) ("The claimant must prove that she was either permanently disabled or subject to a condition which became so severe as to disable her prior to the date upon which her disability insured status expired . . . ."). Here, Plaintiff filed for SSI and DIB just over three (3) years prior to his DLI. The administrative hearing took place less than a month after his DLI. However, this resulted in no prejudice to Plaintiff as he was well within the statutory timeframe for applying for DIB without having to establish a date of onset of the disability.

Second, Plaintiff asserts that the ALJ was required to obtain updated medical testimony for his decision to have "informed medical support." Pl. Mot. 12. However, as the application was filed prior to Plaintiff's DLI, the ALJ was under no obligation to obtain updated medical information unless "the evidence of onset is ambiguous." *Bailey v. Charter*, 68 F.3d 75, 79 (4th Cir. 1995). Additionally, the ALJ took note of Plaintiff's weight and made modifications to the RFC assessment he made in light of Plaintiff's weight. R. 47, 64. Based on the foregoing, the Court finds that Plaintiff errs in his assertion that the delay resulted in prejudice to him.

**IV.	Conclusion**

Based on the foregoing, the Court hereby **DENIES** Plaintiff's Motion and **DENIES** Commissioner's Motion, and **REMANDS** this matter with instruction for the ALJ to supply, on the record, his determination of the degree of limitation for Plaintiff's concentration, persistence and pace and an appropriate RFC assessment in light of these findings and this Court's prior rulings.

September 17, 2018                                         /s/
                                                                    Charles B. Day
                                                                    United States Magistrate Judge

CBD/clc